# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ruth Moton, Leah Hoopes, and Gregory Stenstrom | : | **CASES CONSOLIDATED** |
| | : | |
| | : | |
| v. | : | |
| | : | |
| Kathy Boockvar, Delaware County, | : | |
| Delaware County Board of Elections, | : | |
| Delaware County, Bureau of Elections, | : | |
| James Byrne, Gerald Lawrence, | : | |
| Ashley Lunkenheimer, | : | |
| Laureen Hagan, James Allen, | : | |
| Maryann Jackson, James Savage, | : | |
| Thomas Gallagher, James Ziegelhoffer, | : | |
| Crystal Winterbottom, Chevon Flores, | : | |
| Jean Fleschute, Stacy Heisey-Terrell, | : | |
| Christina Iacono, Christina Perrone, | : | |
| Karen Reeves, Donna Rode, | : | |
| Norma Locke, Jean Davidson, | : | |
| S.J. Dennis, Louise Govinden, | : | |
| Marilyn Heider, Doug Degenhardt, | : | |
| Mary Jo Headley, Jennifer Booker, | : | |
| Kenneth Haughton, Regina Scheerer, | : | |
| Cathy Craddock, Maureen Moore, | : | |
| Pasquale Cipolloni, Gretchen Bell, | : | |
| Anne Coogan, Howard Lazarus, | : | |
| Christine Reuther, William Martin, | : | |
| and James Manly Parks | : | |
| | : | |
| Appeal of: Leah Hoopes and | : | |
| Gregory Stenstrom | : | No.  876 C.D. 2022 |
| | | |
| | | |
| Ruth Moton, Leah Hoopes, and | : | |
| Gregory Stenstrom | : | |
| | : | |
| v. | : | |
| | : | |
| Kathy Boockvar, Delaware County, | : | |

Delaware County Board of Elections,      :
Delaware County, Bureau of Elections,    :
James Byrne, Gerald Lawrence,            :
Ashley Lunkenheimer,                     :
Laureen Hagan, James Allen,              :
Maryann Jackson, James Savage,           :
Thomas Gallagher, James Ziegelhoffer,    :
Crystal Winterbottom, Chevon Flores,     :
Jean Fleschute, Stacy Heisey-Terrell,    :
Christina Iacono, Christina Perrone,     :
Karen Reeves, Donna Rode,                :
Norma Locke, Jean Davidson,              :
S.J. Dennis, Louise Govinden,            :
Marilyn Heider, Doug Degenhardt,         :
Mary Jo Headley, Jennifer Booker,        :
Kenneth Haughton, Regina Scheerer,       :
Cathy Craddock, Maureen Moore,           :
Pasquale Cipolloni, Gretchen Bell,       :
Anne Coogan, Howard Lazarus,             :
Christine Reuther, William Martin,       :
and James Manly Parks                    :    No.  877 C.D. 2022
                                         :
Appeal of: Ruth Moton                    :    Argued: December 9, 2024


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MATTHEW S. WOLF, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE WOLF                              FILED: February 24, 2025


          In these consolidated appeals, we must consider whether a court of
common pleas properly dismissed a complaint challenging the administration of the
2020 General Election.  In the complaint, Ruth Moton, Leah Hoopes, and Gregory

Stenstrom (Appellants) allege that dozens of public officials in Delaware County engaged in a sweeping, carefully hidden conspiracy to fraudulently change the outcome of the 2020 General Election. In a July 15, 2022 decision, the Court of Common Pleas of Delaware County (trial court) sustained two sets of preliminary objections filed by former Secretary of the Commonwealth Kathy Boockvar (Secretary or Secretary Boockvar) and the above-captioned Delaware County public officials and entities that were named as defendants below (Delaware Defendants, and together with Secretary Boockvar, Appellees) and dismissed Appellants' complaint. It did so principally on the basis that the 2020 General Election is long over and settled, so this matter is moot. We will affirm that determination. Also before the Court are Appellees' Applications for Sanctions against Attorney Thomas Carroll, counsel for Appellant Moton (Attorney Carroll) on the basis that this appeal is frivolous, which we will deny.

Appellants filed their complaint in January 2022, after receiving the results of a Right-to-Know Law[1] (RTKL) request. At no time did Appellants attempt to avail themselves of the Pennsylvania Election Code[2] to contest the election or its administration pursuant to law, though many other litigants managed to do so. Appellants have persisted in this appeal through yet another General Election, in a case that is obviously moot, having obviously ignored or avoided the lawful statutory remedy, on claims that look largely frivolous.

Election integrity and transparency are serious matters. So too are election finality and legitimacy. The Election Code balances those policy considerations and tells parties how, where, and when they may challenge an election—and how and when they may not. *See Baxter v. Phila. Bd. of Elections*,

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.
[2] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

325 A.3d 645, 646 (Pa. 2024) (per curiam) (Donohue, J., concurring) (explaining that litigating election challenges as they arise "under the Election Code," however imperfect, "is the nature of our system"). When parties venture beyond the Election Code's procedures into civil litigation over elections, they will find our courts being careful to entertain claims only "in the ordinary course." *New PA Project Educ. Fund v. Schmidt* (Pa., No. 112 MM 2024, filed Oct. 5, 2024), 2024 WL 4410884 (per curiam), slip op. at 3 n.2; *see Repub. Nat'l Comm. v. Schmidt* (Pa., No. 108 MM 2024, filed Oct. 5, 2024), 2024 WL 4406909 (per curiam) (Brobson, J., concurring), slip op. at 4 (explaining need for even important election matters to proceed before "an appropriate court with appropriate parties in the ordinary course").

In affirming dismissal of the complaint, we end this ill-conceived matter, we hope for good. That does not mean we do not value election integrity. We do. This Court stands ready to examine any election when asked, but we do that by rigorously applying the law, including the Election Code's procedural restrictions and prudential limits on judicial power. Those laws apply to everyone, not least "against those who seek to delegitimize this Commonwealth's elections, or its judiciary." *Cnty. of Fulton v. Sec'y of Commonwealth*, 292 A.3d 974, 1063-64 (Pa.) (Dougherty, J., concurring), *cert. denied sub nom. Fulton Cnty., Pa. v. Sec'y of the Commonwealth*, 144 S. Ct. 283 (2023).

## I. BACKGROUND

Appellants are residents and electors of Delaware County who voted in the 2020 General Election. Appellant Moton was also a candidate in the 2020 General Election. Appellants filed a complaint in the trial court on January 1, 2022 (Complaint) seeking relief with respect to the 2020 General Election in five counts.

The 104-page Complaint makes sweeping allegations that the Delaware Defendants[3] intentionally created chaos around their administration of the 2020 General Election in order to enable and then conceal their commission of election fraud. The Complaint further alleges that the Delaware Defendants destroyed, deleted, and concealed lawfully cast ballots, data, materials, and equipment used during the Election, and then created fraudulent return sheets after the Election. The Complaint comprises claims sounding in common law fraud (Count I), fraudulent misrepresentation (Count II), negligent misrepresentation (Count III), common law quo warranto (Count IV), and mandamus and/or equitable relief (Count V). The complaint seeks relief (1) enjoining further destruction or alteration of data or equipment, (2) requiring Appellees to produce all equipment and data used in the Election and allowing Appellants to access that equipment and data, and (3) allowing Appellants to conduct a forensic investigation of that equipment and data. The Complaint also essentially seeks declaratory relief in the form of determinations that Appellees violated Appellants' constitutional rights, violated the RTKL, and engaged in a conspiracy to violate the law and commit fraud.

Secretary Boockvar filed preliminary objections to the Complaint based on improper service, lack of standing (under the common law, as well as for quo warranto actions and actions under the Election Code in particular), mootness, sovereign immunity, and several demurrers. The Delaware Defendants filed a second set of preliminary objections based on improper service, mootness, and failure to exhaust statutory remedies under the Election Code. Appellants filed responses in opposition to each set of preliminary objections.

---

[3] The Delaware Defendants are Delaware County (County), the Delaware County Board of Elections, the Delaware County Bureau of Elections, and the individual employees and officials of those entities as captioned above.

On July 15, 2022, the trial court entered an order sustaining both sets of preliminary objections in their entirety and dismissing the Complaint with prejudice. The trial court found that "[a]s the . . . Complaint challenges the administration of an election that occurred in 2020, and the prevailing candidates in that election have been inaugurated, the claims set forth in the Complaint are moot and must be dismissed." Reproduced Record (R.R.)[4] at 341a. The trial court found the exceptions to the mootness doctrine inapplicable. *Id.* It did not expressly discuss any other preliminary objections beyond sustaining them.

On August 10, 2022, Moton filed a motion for reconsideration. On August 14, 2022, Hoopes and Stenstrom filed a notice of appeal. On August 15, 2022, Moton filed her own notice of appeal from the trial court's order.[5] The trial court denied the motion for reconsideration on September 16, 2022, on the basis that it had been divested of jurisdiction by the notices of appeal. In that Opinion denying reconsideration, the trial court gave the following reasoning regarding its earlier decision dismissing the Complaint:

> The Defendants['] preliminary objections included challenges on the grounds of service, failure to exhaust statutory remedies under the Election [C]ode, immunity, and most poignant, mootness. In support of their contention, Defendants cited to *Bognet v. Degraffenreid*,

[4] There were two reproduced records filed in these consolidated matters. This Opinion will principally cite the reproduced record filed by Appellant Moton, unless otherwise noted. Although that reproduced record does not use pagination followed by a small letter "a" as required by Pa.R.A.P. 2173, we will use the correct pagination format.

[5] In their brief in this Court, the Delaware Defendants argue that Moton's notice of appeal was untimely filed on October 26, 2022, and they essentially request that the Court quash her appeal. But this Court's docket indicates that the two consolidated notices of appeal now before us were timely filed on August 14 and 15, 2022, respectively. Moton did file a second notice of appeal on October 26, 2022, but the Court struck that filing as duplicative of her timely filed notice of appeal. *See Moton v. Boockvar* (Pa. Cmwlth., No. 1189 C.D. 2022, Order filed Mar. 3, 2023).

141 S. Ct. 2508 (2021)[,[6]] which involved election fraud in the 2020 [General E]lection. The [United States] Court of Appeals for the Third Circuit found that the Plaintiff's [sic] lacked standing on all grounds. On petition for writ of certiorari to the Third Circuit, the Supreme Court [of the United States] vacated the judgment and remanded the case with instructions to dismiss the case as moot. This court found *Bognet* persuasive.

. . . .

That Pennsylvania's election was certified, and that the President and Vice President assumed office a full year before this lawsuit was filed is a clear indicator that claims regarding election fraud from November of 2020 is [sic] moot. There is thus no further relief related to the 2020 election that the Court could grant.

R.R. at 337a-38a.

## II.  ISSUES

On appeal, Appellants raise essentially two issues.  They first argue that the matter is not moot, or alternatively, that exceptions to the mootness doctrine apply, so it was error for the trial court to dismiss the Complaint as moot.  Second, Hoopes and Stenstrom challenge the trial court's conclusion on standing, arguing that they have standing as certified poll watchers.  In response, Appellees maintain the trial court correctly sustained the preliminary objections on mootness and standing.  In addition, Appellees raise alternative bases on which we should affirm the trial court.  The Delaware Defendants maintain the trial court correctly found a failure to exhaust statutory remedies.  Secretary Boockvar invokes deficient service of the Complaint on her, sovereign immunity, and her demurrers to the Complaint as further reasons to affirm.

---

[6] In *Bognet*, the Supreme Court granted certiorari, vacated the Third Circuit's decision, and remanded for dismissal as moot in accordance with *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950).

7

### III. DISCUSSION

"We review a common pleas court's decision sustaining preliminary objections and dismissing a complaint for an abuse of discretion or error of law." *Firearm Owners Against Crime v. City of Harrisburg*, 218 A.3d 497, 505 (Pa. Cmwlth. 2019) (en banc), *aff'd sub nom. Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467 (Pa. 2021). Where a preliminary objection raises a question of law, "our standard of review is *de novo* and our scope of review is plenary." *Id.* (citing *Off. of the Governor v. Donahue*, 98 A.3d 1223, 1228 (Pa. 2014)); *see also Crespo v. Hughes*, 292 A.3d 612, 617 (Pa. Super. 2023) ("Mootness, like standing, is a question of law.").

A trial court ruling on preliminary objections—and this Court when reviewing that ruling—must "accept as true all well-pleaded allegations of material fact" and all reasonable inferences from those facts, and the objections "should only be sustained if the law says with certainty that no recovery is possible." *Id.* at 505-06 & n.12. Given the fantastical nature of the claims in this Complaint, it may seem strange that the Court would "accept [them] as true." *Id.* at 506 n.12. This assumption of truth is a temporary but important legal fiction that helps us "avoid conflating the question of whether the asserted facts state a plausible claim with the question of whether such facts are accurate." *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015). But it is just that—a fiction. We are not saying that we agree with the claims, or believe them, or "that [Appellants'] allegations are true or even that [Appellants would] ultimately be able to prove them." *Barker ex rel. U.S. v. Columbus Reg'l Healthcare Sys., Inc.*, 977 F. Supp. 2d 1341, 1346 (M.D. Ga. 2013). In a colloquial sense, at the preliminary objection stage *we do not yet*

*care* whether the factual claims are true. We are answering a different question, to which we now turn: Are the claims procedurally and legally sound?

## A. Mootness

"Generally, a case will be dismissed as moot if there exists no actual case or controversy." *Mistich v. Pa. Bd. of Prob. & Parole*, 863 A.2d 116, 119 (Pa. Cmwlth. 2004). The controversy must be real, concrete, and sufficiently adverse to sharpen the issues for resolution. *Id.* Mootness analysis also considers whether the court can grant a meaningful remedy, since "courts will not enter judgments or decrees to which no effect can be given." *Id.*; *Toland v. Pa. Bd. of Prob. & Parole*, 311 A.3d 649, 658 (Pa. Cmwlth. 2024).

There are exceptions to the mootness doctrine, two of which are potentially relevant here. *See Toland*, 311 A.3d at 658. The first exception, for conduct capable of repetition but likely to evade review, requires two factual predicates to be met: "(1) the action the complaining party challenges must be so short in duration that it would have ended by the time the parties could fully litigate the issue, and (2) a reasonable expectation must exist that the offending party would subject the complaining party to the same exact action again." *Id.* The second exception allows us to decide moot cases if they are "of great public importance." *Id.* But like mootness exceptions generally, that principle is to be applied only in rare cases and "the general, prudential approach in Pennsylvania remains that courts do not review moot questions." *Chester Water Auth. v. Pa. Dep't of Cmty. & Econ. Dev.*, 249 A.3d 1106, 1115 (Pa. 2021).

Hoopes and Stenstrom argue the Complaint is not moot because they are not requesting to have the 2020 General Election overturned or decertified. They view the trial court as having mistakenly relied on the finality of the 2020 General

9

Election as a basis for mootness. Instead, they claim they seek "no less than 10" other remedies for election law violations, spoliation, and fraud, as well as costs, expenses, and attorney fees incurred in having to bring this action and damages they are entitled to pursuant to law. Hoopes & Stenstrom Br. at 21. Alternatively, they argue that a mootness exception applies because this matter will evade review. They assert that the misconduct they allege will occur again in future elections. They also accuse Appellees of voluntarily and strategically mooting this case, though they do not explain how Appellees would have done so.

Moton makes similar arguments, pointing out that the counts of the Complaint allege, and seek remedies for, specific actions by the Delaware Defendants during the 2020 General Election, but "do not rely on, nor ask for, transformation of prior events," such as the certification of the election results. Moton's Br. at 31. Moton also invokes a mootness exception in the alternative, arguing that the matter is of great public importance. In support, she points to the need for clear understanding of the Election Code's requirements, and a recent decision of this Court that decided a technically moot appeal on the basis that proper construction of the Election Code is of great public importance. *See* Moton's Br. at 33 (citing *In re Pets. to Open Ballot Box Pursuant to 25 P.S. §3261(A)*, 295 A.3d 325, 333 (Pa. Cmwlth. 2023) (hereinafter *Appeal of Dawson*)).[7]

In response, the Delaware Defendants start with the proposition that the certification of an election moots any claim regarding the administration of that election. In support, they cite *Bognet*, 141 S. Ct. 2508, as the trial court did. They

---

[7] Because Moton's argument on mootness bears summarizing, we reject the Secretary's assertion that Moton waived this issue by failing to brief it. *See* Secretary's Br. at 16 n.6. In making that assertion, the Secretary did not cite or discuss the portions of Moton's brief summarized here.

10

also rely on our unreported decision in *Ioannidis v. Wolf* (Pa. Cmwlth., No. 635 M.D. 2020, filed July 8, 2021), *aff'd*, 270 A.3d 1110 (Pa.), *cert. denied*, 143 S. Ct. 98 (2022), where we held that certification of the 2020 General Election and the inauguration of the President on January 20, 2021, rendered "any claim moot." Secretary Boockvar makes similar arguments, claiming that the matter was moot from the moment it was filed in 2022, because the Complaint "could not possibly bring about the result [Appellants] were seeking," i.e., because the 2020 General Election was long over. Secretary's Br. at 13. She argues that since the trial court could not order anyone to undo the results of the 2020 General Election, no meaningful relief could be granted, which is the hallmark of mootness.

Appellees dispute that any mootness exception applies. They specifically argue this case is not capable of repetition yet evading review because the Complaint concerns allegedly unlawful actions of individuals which are unlikely to be repeated, rather than challenges to laws or policies that are perpetually in place, which is the typical basis for this exception. Appellees also more generally argue that we should not apply exceptions to the mootness doctrine where a plaintiff has failed to exhaust statutory remedies under the Election Code. In support, they again cite *Ioannidis*, where we stated that we would not "apply any of the . . . exceptions to the mootness doctrine in this case because [the p]etitioner failed to avail himself of the statutory remedies provided in the Election Code prior to filing the [pleading]." *Ioannidis*, slip op. at 9.

We find our decision in *Ioannidis* persuasive, particularly because it involved the intersection of mootness and election law, as this case does. There, Andrew Ioannidis filed a petition for review in our original jurisdiction against the Governor and Secretary of the Commonwealth, seeking "declaratory and injunctive

relief, and an audit and recount of the results of the [2020 General Election] relating to the election of electors of President and Vice-President of the United States." *Id.*, slip op. at 1-2. We noted that the petitioner had not sought to challenge the administration of the election through the procedures set out in the Election Code (such as by filing an election contest petition). We also noted his argument that he was not actually seeking to contest the outcome of the election, or even alleging violations of the Election Code, but rather sought to vindicate his constitutional rights and to determine "whether [the r]espondents' conduct was arbitrary [or] fraudulent." *Id.*, slip op. at 6. We rejected that argument, reasoning as follows:

> Assuming that the allegations contained in the Amended Petition are true, Petitioner may well have asserted a viable claim with respect to the conduct of the 2020 General Election . . . . However, the subsequent certification of the election results and the inauguration of the new President and Vice-President on January 20, 2021, have rendered any claim moot. *See generally Bognet* [141 S. Ct. 2508] . . . ; *Conant*[ *v. Brown*, 248 F. Supp. 3d 1014, 1019 (D. Or. 2017), *aff'd*, 726 F. App'x 611 (9th Cir. 2018)] ("I agree with [d]efendants that the challenges to the 2016 certified election results and ascertainment of electors are moot because that process is complete, the electors have performed their duties, and the President has been inaugurated.").
>
> Because this Court may not grant Petitioner the injunctive or mandamus relief that he requests, the instant matter is deemed to be moot. *See Graziano Constr*[.] *Co*[.]*, Inc. v. Lee*, 444 A.2d 1190, 1193 (Pa. Super. 1982) ("[W]e cannot enter judgments or decrees to which effect cannot be given. The rule is that where . . . pending an appeal, an event occurs which renders it impossible for the appellate court to grant any relief, the appeal will be dismissed.") (citations omitted); 18 Standard Pa. Practice 2d § 99.7 (2021) ("Mandamus is unavailable where it would be futile or ineffectual by reason of the respondent's inability to comply therewith. Mandamus also will not

> lie . . . where only a moot question, and no justiciable issue, is presented.") (footnotes omitted).

*Id.*, slip op. at 8-9 (footnote omitted).

Here, the claims for relief in the Complaint are strikingly similar to those requested of this Court in *Ioannidis*. We determined those claims were moot, in part because the election was completed and certified, and its officeholders inaugurated, preventing the Court from being able to afford meaningful relief. Appellants make the same argument: that they seek information and investigation, rather than to disturb the results of the election. We rejected that argument in *Ioannidis*, and similarly here we conclude that this matter is technically moot. Further supporting that result, our Supreme Court recently recognized that the *expiration* of the term of an elected office (as distinct from a candidate's *inauguration* into that office) also renders the court unable to afford relief, and thus moots the case. *Martin v. Donegal Twp.*, 325 A.3d 502, 508-09 (Pa. 2024).

Further, we agree with Appellees that no exception to the mootness doctrine applies in this case. In general, the exceptions are to be applied only in rare cases. *Chester Water Auth.*, 249 A.3d at 1115. Regarding the first exception (capable of repetition yet evading review), we conclude that neither of the two factual prerequisites is met. The conduct alleged in the Complaint is not of such short duration that it could not be reviewed if it were to occur in the future. That is principally because, as we discuss further below, the Election Code provides a thorough and expeditious process for scrutinizing the conduct of elections. Appellants may avail themselves of that process in the future, making the alleged conduct—which they allege is pervasive and years-long, not of short duration— unlikely to evade review. As to the second predicate, we conclude that there is not a "reasonable expectation" that Appellees would engage in "the same exact action"

13

as alleged in the Complaint. *Toland*, 311 A.3d at 658. Treating the allegations in the Complaint as true, as we must, it would be unreasonable to expect Appellees to engage in the same conduct in future elections, because that conduct would expose them to considerable litigation under the Election Code (if, as we discuss below, a party timely avails themselves of that available remedy) and potentially to other liability.

Regarding the great-public-importance exception, we acknowledge that, occasionally, an election matter will meet that test. *See, e.g., Appeal of Dawson*, 295 A.3d at 333. But that decision applied the exception only because this Court had, in short time, received at least three appeals in separate cases on the exact same issue of the proper construction of the Election Code. *Id.* Even when statutes of great public importance—such as the RTKL or the Election Code—are implicated, "not every claim arising under the [statute] crosses the high threshold for exception." *Chester Water Auth.*, 249 A.3d at 1115. We conclude that the exception does not apply here.

Most importantly, we noted in *Ioannidis* that we were "not inclined to apply any of the foregoing exceptions to the mootness doctrine in this case because Petitioner failed to avail himself of the statutory remedies provided in the Election Code prior to filing the instant Amended Petition for Review." *Ioannidis*, slip op. at 9. We considered our mootness analysis to be strongly informed by the General Assembly's obvious choice to provide, in the Election Code, the sole path for testing the administration of elections. We relied on the principle that "the proper remedies for violations of the Election Code are to be found within the comprehensive legislative framework of the Code itself." *Brunwasser v. Fields*, 409 A.2d 352, 354 (Pa. 1979). We observed that the Election Code provides carefully for various ways

14

in which persons may challenge the administration of an election, including by filing a contest petition, though such a challenge must be brought within 20 days of the election. *Ioannidis*, slip op. at 11 (quoting Sections 1711 and 1756 of the Election Code, 25 P.S. §§ 3291, 3456). We concluded that the petitioner "utterly failed to avail himself of the foregoing appropriate statutory remedy thereby precluding the grant of the requested declaratory relief." *Id.* Because we consider the mootness issue alongside questions of exhaustion of remedies under the Election Code, *see Ioannidis*, we next turn to that issue.

## B. Failure to Exhaust Statutory Remedies

The Delaware Defendants assert that, even if this matter were not moot, we should affirm the trial court's dismissal on the basis that it properly sustained their separate preliminary objection as to failure to exhaust statutory remedies. Citing *Brunwasser*, 409 A.2d at 354, they point to the same concept we relied on in *Ioannidis*: that the Election Code is the exclusive remedial scheme for examining the administration of an election. Appellants do not discuss this issue in their briefs[8] and, unlike for mootness and standing which they do address, they do not list the exhaustion issue in their statements of questions involved. Thus, by failing to address this aspect of the trial court's decision—an aspect that could be challenged on appeal because the trial court sustained *all* preliminary objections *in their entirety*—Appellants have waived this issue. *Gun Owners of Am., Inc. v. City of Phila.*, 311 A.3d 72, 85 (Pa. Cmwlth. 2024) (en banc) (issues not developed in brief are waived); *Columbia Gas Transmission Corp. v. Piper*, 615 A.2d 979, 986 n.3 (Pa.

---

[8] Appellants filed no reply briefs in this matter.

15

Cmwlth. 1992) (en banc) (issues not named in statement of questions involved are waived, even if addressed in brief).[9]

For completeness, however, we will address the issue, and we conclude that even if the matter were not properly dismissed as moot, it would have been properly dismissed for failure to exhaust statutory remedies. Before bringing suit at law or in equity, a party must exhaust any adequate statutory or administrative remedy.[10] *Canonsburg Gen. Hosp. v. Dep't of Health*, 422 A.2d 141, 144 (Pa. 1980); *Funk v. Dep't of Env't Prot.*, 71 A.3d 1097, 1101 (Pa. Cmwlth. 2013); *Keystone ReLeaf LLC v. Dep't of Health*, 186 A.3d 505, 513 (Pa. Cmwlth. 2018) (en banc). If there is an adequate remedy available, courts must refrain from exercising equity jurisdiction to adjudicate declaratory relief, or quasi-equitable relief like mandamus. *Keystone ReLeaf*, 186 A.3d at 513-14. This requirement prevents premature judicial intervention in a remedial process that has already been established by law, and allows development of a factual record on the terms established for that legal remedy. *Funk*, 71 A.3d at 1101; *Keystone ReLeaf,* 186 A.3d at 518. Courts may

---

[9] At oral argument, Appellants Hoopes and Stenstrom, pro se, and Attorney Carroll, as counsel for Appellant Moton, were directly asked about *Brunwasser*, 409 A.2d 352, which had been cited in the Delaware Defendants' brief. Neither the pro se parties nor Attorney Carroll were able to articulate any arguments regarding that case. After oral argument, on December 11, 2024, Appellants Hoopes and Stenstrom filed a Praecipe for Supplemental Brief in Support of Full Review on the Merits (Praecipe). That filing discusses *Brunwasser*, among other things, and was effectively a supplemental memorandum of law that violated Pa.R.A.P. 2501(a), which prohibits post-argument communication with the Court "except upon application." Since permission to file said memorandum of law was not properly sought, the Praecipe is stricken. Even if the Court had considered the arguments raised in the Praecipe, those arguments fail for the reasons that we articulate in the remainder of Section III.B of this Opinion.

[10] "The terms 'exhaustion of statutory remedies' and 'exhaustion of administrative remedies' are at times used interchangeably in our decisional law." *Off. of the Governor v. Donahue*, 98 A.3d 1223, 1231 n.6 (Pa. 2014). The latter term more often refers to an administrative appeals process created by agency rule or regulation, as opposed to one created by statute. *Id.*

sometimes consider cases brought by plaintiffs who have not yet exhausted, but only when a defined exception to the exhaustion requirement applies, such as when "the constitutionality of a statutory scheme or its validity is challenged," or "legal or equitable remedies are unavailable or inadequate." *Keystone ReLeaf*, 186 A.3d at 514 (quoting *Empire Sanitary Landfill, Inc. v. Dep't of Env't Res.*, 684 A.2d 1047, 1054 (Pa. 1996)).

We have applied exhaustion principles consistently in election-related matters. As we have discussed, this Court in *Ioannidis* concluded that a would-be plaintiff was required to pursue the remedies in the Election Code before pursuing another cause of action, given the Code's primacy as the remedial scheme for election administration. Relatedly, in a recent appeal arising under the Code, we emphasized that the Code provides the exclusive remedial scheme and also carefully constrains that scheme with jurisdictional timelines to ensure prompt resolution of any dispute about our elections. *See In re Contest of Nov. 7, 2023 Election of Towamencin Twp.* (Pa. Cmwlth., No. 1482 C.D. 2023, filed Apr. 8, 2024), slip op. at 10. "Allowing untimely challenges"—or, for that matter, challenges that circumvent the Code entirely, like this case—"could render every election suspect, leaving the public who voted, and the government body affected by the election continually unsure as to its status." *Id.* (quoting *Koter v. Cosgrove*, 844 A.2d 29, 34 (Pa. Cmwlth. 2004) (internal quotation marks omitted)).

For that "critical reason[]," the General Assembly established numerous obligations in the Election Code and numerous procedures for vindicating them pursuant to the Code. *Id.* The Code prohibits, among other things: violation of the oath of office by election officials; failing to perform a duty set forth in the Code; fraudulent conduct by election officers; and the refusal of county boards to

permit the inspection of or to destroy "any general or duplicate return sheet, tally paper, affidavit, nomination petition, certificate or paper, other petition, witness list, account, contract, report or any other document or record in the custody of such county board which, under the provisions of [the Code], is required to be open to public inspection." 25 P.S. §§ 3504, 3510, 3525, 3548. The remedies for violations of those provisions, such as the violations the Complaint alleges, "are to be found within the comprehensive legislative framework of the Code itself." *Brunwasser*, 409 A.2d at 354. The Election Code provides a self-contained system for good-faith challenges to elections. There are risks to going beyond that system. One is confusion and chaos. *See New PA Project Educ. Fund* (Pa., No. 112 MM 2024), slip op. at 3; *Baxter*, 325 A.3d at 645-46. Another is endless bad-faith litigation calculated to weaken our elections and the institutions that administer them, including our courts. *See Cnty. of Fulton*, 292 A.3d at 1013-14. To avoid those evils, we believe requiring exhaustion is especially important in election-related matters.

It is clear that Appellants did not file any action pursuant to the Election Code, such as an election contest petition. To the extent they would argue they could not possibly have done so timely, we note that our courts do permit nunc pro tunc relief in cases arising under the Election Code, though we hold such requests in election cases "to a stricter rule" than in other types of cases. *In re Twenty-Sixth Election Dist., Second Ward, Borough of Lehighton*, 41 A.2d 657, 660 (Pa. 1945). Aside from a few passing and undeveloped references to "nunc pro tunc relief" in the Complaint, Appellants have not actually sought to file any nunc pro tunc action under the Election Code. *See* Complaint, ¶¶ 385-86. Thus, we conclude they have

18

failed to exhaust the exclusive statutory remedies found in the Code, which required the trial court to dismiss the Complaint.

### C. Applications for Sanctions

Finally, we address Appellees' Applications for Sanctions, filed December 7 and 19, 2023, respectively (Applications). The Applications seek similar relief, asking for sanctions to be imposed against Attorney Carroll in the form of striking Appellant Moton's brief, dismissing her appeal, remanding for imposition of fees and costs against Attorney Carroll, and/or referring Attorney Carroll to the Disciplinary Board of the Supreme Court of Pennsylvania (Disciplinary Board) for professional misconduct. The Applications give the same basis for that relief: that this "appeal is frivolous [because] it has no basis in law or fact." Secretary's Application at 3-4; *accord* Delaware Defendants' Application at 8-9.

An appeal is frivolous when it has no basis in law or fact and is "readily recognizable as devoid of merit in that there is little prospect of success." *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 768 (Pa. Cmwlth. 2008) (assessing fees and costs under Pa.R.A.P. 2744). An appellate brief that "lacks support for an argument and citation to pertinent authority is grounds to find an appeal frivolous." *Venafro v. Dep't of Transp., Bureau of Driver Licensing*, 796 A.2d 384, 388 (Pa. Cmwlth. 2002). Although, with the benefit of analysis, we reject Appellants' arguments as to mootness and its exceptions, which were contained in their briefs, we are not persuaded that those arguments were wholly without merit. Nor are we persuaded by Appellees' apparent suggestion that Attorney Carroll's unconscionable conduct in other election-related litigation should, by association,

19

subject him to sanctions more readily here. *See* Applications at 9-10 (both citing *Cnty. of Fulton*, 292 A.3d 974).[11]   Accordingly, we deny the Applications.

## IV.  CONCLUSION

This matter challenges the administration of the 2020 General Election, which occurred more than four years ago.  We conclude that it is moot and does not warrant application of any exception to the mootness doctrine.  Further, we conclude that Appellants failed to exhaust statutory remedies that were available to them under the Election Code.  Accordingly, the trial court correctly sustained the preliminary objections and dismissed the Complaint.  We will affirm that determination.[12, 13]

However, we conclude that the arguments on appeal are not so utterly lacking in support as to be frivolous, so we deny the Applications for Sanctions.

_____
MATTHEW S. WOLF, Judge

President Judge Cohn Jubelirer and Judges Covey, Fizzano Cannon, and Wallace did not participate in this decision.

---

[11]   We also note that our Supreme Court has already referred Attorney Carroll to the Disciplinary Board for examination of his conduct in that matter. *Cnty. of Fulton*, 292 A.3d at 1018.

[12] Given these conclusions, we do not address the many other bases for the preliminary objections below.

[13] The "emphatic[] dissent" so recharacterizes the Majority Opinion that it responds to an opinion we have not written.  Dissenting Opinion at 22.  Endeavoring, as always, to stay on the respectful side of disagreement, the Majority chooses not to respond to the Dissent.

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ruth Moton, Leah Hoopes, and<br>Gregory Stenstrom | : | **CASES CONSOLIDATED** |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| Kathy Boockvar, Delaware County, | : | |
| Delaware County Board of Elections, | : | |
| Delaware County, Bureau of Elections, | : | |
| James Byrne, Gerald Lawrence, | : | |
| Ashley Lunkenheimer, | : | |
| Laureen Hagan, James Allen, | : | |
| Maryann Jackson, James Savage, | : | |
| Thomas Gallagher, James Ziegelhoffer, | : | |
| Crystal Winterbottom, Chevon Flores, | : | |
| Jean Fleschute, Stacy Heisey-Terrell, | : | |
| Christina Iacono, Christina Perrone, | : | |
| Karen Reeves, Donna Rode, | : | |
| Norma Locke, Jean Davidson, | : | |
| S.J. Dennis, Louise Govinden, | : | |
| Marilyn Heider, Doug Degenhardt, | : | |
| Mary Jo Headley, Jennifer Booker, | : | |
| Kenneth Haughton, Regina Scheerer, | : | |
| Cathy Craddock, Maureen Moore, | : | |
| Pasquale Cipolloni, Gretchen Bell, | : | |
| Anne Coogan, Howard Lazarus, | : | |
| Christine Reuther, William Martin, | : | |
| and James Manly Parks | : | |
| | : | |
| Appeal of: Leah Hoopes and | : | |
| Gregory Stenstrom | : | No. 876 C.D. 2022 |
| | : | |
| | : | |
| Ruth Moton, Leah Hoopes, and | : | |
| Gregory Stenstrom | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| Kathy Boockvar, Delaware County, | : | |

Delaware County Board of Elections,        :
Delaware County, Bureau of Elections,      :
James Byrne, Gerald Lawrence,              :
Ashley Lunkenheimer,                       :
Laureen Hagan, James Allen,                :
Maryann Jackson, James Savage,             :
Thomas Gallagher, James Ziegelhoffer,      :
Crystal Winterbottom, Chevon Flores,       :
Jean Fleschute, Stacy Heisey-Terrell,      :
Christina Iacono, Christina Perrone,       :
Karen Reeves, Donna Rode,                  :
Norma Locke, Jean Davidson,                :
S.J. Dennis, Louise Govinden,              :
Marilyn Heider, Doug Degenhardt,           :
Mary Jo Headley, Jennifer Booker,          :
Kenneth Haughton, Regina Scheerer,         :
Cathy Craddock, Maureen Moore,             :
Pasquale Cipolloni, Gretchen Bell,         :
Anne Coogan, Howard Lazarus,               :
Christine Reuther, William Martin,         :
and James Manly Parks                      :        No.  877 C.D. 2022
                                           :
Appeal of: Ruth Moton                      :

# **O R D E R**

AND NOW, this 24th day of February 2025, the July 15, 2022 order of the Court of Common Pleas of Delaware County is AFFIRMED.

The Applications for Sanctions filed December 7 and 19, 2023, by former Secretary of the Commonwealth Kathy Boockvar and the other above-captioned Appellees, respectively, are DENIED.

The Praecipe for Supplemental Brief in Support of Full Review on the Merits, filed December 11, 2024, by Appellants Leah Hoopes and Gregory Stenstrom, is hereby STRICKEN for failure to comply with Pa.R.A.P. 2501(a).

_____
MATTHEW S. WOLF, Judge

Ruth Moton, Leah Hoopes, and
Gregory Stenstrom

      v.

Kathy Boockvar, Delaware County,
Delaware County Board of Elections,
Delaware County, Bureau of Elections,
James Byrne, Gerald Lawrence,
Ashley Lunkenheimer, Laureen Hagan,
James Allen, Maryann Jackson,
James Savage, Thomas Gallagher,
James Ziegelhoffer, Crystal Winterbottom,
Chevon Flores, Jean Fleschute,
Stacy Heisey-Terrell, Christina Iacono,
Christina Perrone, Karen Reeves,
Donna Rode, Norma Locke, Jean Davidson,
S.J. Dennis, Louise Govinden,
Marilyn Heider, Doug Degenhardt,
Mary Jo Headley, Jennifer Booker,
Kenneth Haughton, Regina Scheerer,
Cathy Craddock, Maureen Moore,
Pasquale Cipolloni, Gretchen Bell,
Anne Coogan, Howard Lazarus,
Christine Reuther, William Martin,
and James Manly Parks

Appeal of: Leah Hoopes and
Gregory Stenstrom

**CASES CONSOLIDATED**

No. 876 C.D. 2022

Ruth Moton, Leah Hoopes, and
Gregory Stenstrom

      v.

Kathy Boockvar, Delaware County,
Delaware County Board of Elections,
Delaware County, Bureau of Elections,
James Byrne, Gerald Lawrence,
Ashley Lunkenheimer,
Laureen Hagan, James Allen,
Maryann Jackson, James Savage,
Thomas Gallagher, James Ziegelhoffer,

Crystal Winterbottom, Chevon Flores,     :
Jean Fleschute, Stacy Heisey-Terrell,     :
Christina Iacono, Christina Perrone,     :
Karen Reeves, Donna Rode,     :
Norma Locke, Jean Davidson,     :
S.J. Dennis, Louise Govinden,     :
Marilyn Heider, Doug Degenhardt,     :
Mary Jo Headley, Jennifer Booker,     :
Kenneth Haughton, Regina Scheerer,     :
Cathy Craddock, Maureen Moore,     :
Pasquale Cipolloni, Gretchen Bell,     :
Anne Coogan, Howard Lazarus,     :
Christine Reuther, William Martin,     :
and James Manly Parks     :     No. 877 C.D. 2022
    :
Appeal of: Ruth Moton     :     Argued: December 9, 2024


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE MATTHEW S. WOLF, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## _OPINION NOT REPORTED_

DISSENTING OPINION
BY JUDGE McCULLOUGH             FILED: February 24, 2025


       Respectfully, the majority affirms the dismissal of Appellants'[1] entire litigation by misconstruing their claims and misapplying the mootness standards and exceptions. When considering mootness, we must evaluate each claim to determine whether we can grant meaningful relief.[2] Each claim in a single multi-claim suit must be

---

    [1] Ruth Moton (Moton), Leah Hoopes, and Gregory Stenstrom (Hoopes/Stenstrom) are collectively referred to herein as Appellants.

    [2] _See United States v. Vega_, 960 F.3d 669, 673 (5th Cir. 2020). _See also Wilson v. Birnberg_, 667 F.3d 591, 595 (5th Cir. 2012) ("A suit may become moot only as to a particular form of relief. Therefore, we separately analyze mootness as to the claims supporting money damages and for equitable relief.") (citing _Henschen v. City of Houston_, 959 F.2d 584, 587 (5th Cir. 1992) (finding claim for immediate injunctive relief moot but claim for damages live)); _JSLG, Inc. v. City of Waco_, 504 F. App'x 312, 315-19 (5th Cir. 2012) (_per curiam_) (analyzing mootness separately as to claims for injunctive and
**(Footnote continued on next page…)**

PAM - 2

individually examined for mootness and disposed of accordingly. Yet here, that has not occurred. Instead, the Majority, in a broad stroke and without any basis in the complaint whatsoever, affirms the dismissal of the complaint, concluding that Appellants' sole objective in bringing the lawsuit is to overturn or decertify the November 2020 General Election (Election). *See Hoopes v. Boockvar* (Pa. Cmwlth., Nos. 876 and 877 C.D. 2022, filed February 24, 2025), slip op. at 13 (rejecting outright Appellants' argument that they are not seeking "to disturb the results of the election"). *See also Hoopes v. Boockvar* (Pa. Cmwlth., Nos. 876 and 877 C.D. 2022, filed February 24, 2025), slip op. at 1 (mischaracterizing Appellants' claims as simply "challenging **the administration of** the 2020 General Election"). This is wrong for several reasons. As explained below, the complaint actually alleges not only the occurrence of, but the likelihood of ongoing fraud, misrepresentation, willful misconduct in the performance of Defendants' official duties and oaths of office, violations of the Pennsylvania Election Code,[3] the United States and Pennsylvania Constitutions,[4] and improprieties in responses to requests made pursuant to the Right-to-Know Law[5] (RTKL). The Majority fails to separately analyze these claims and requests for relief, which it must do for mootness. As I explain below, these

---

declaratory relief and for damages); 13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3533.2 (3d ed. 2023) ("Individual issues may be mooted [through voluntary action by the defendant that accords [ ] the relief demanded by the plaintiff] if all other matters are resolved, or even though other matters remain to be resolved."). Cf. also *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 286 (5th Cir. 2012) ("[A] plaintiff seeking both injunctive relief and money damages can continue to pursue the case, even after the request for an equitable remedy is rendered moot.").

[3] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

[4] *See, e.g.*, *Reynolds v. Sims*, 377 U.S. 533 (1964) (failing to count a legal vote and/or allowing a fraudulent vote to be counted are both violative of fundamental constitutional rights of citizens because such actions and conduct disenfranchises registered voters in direct violation of the state and federal constitution).

[5] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

claims are "live," and Appellants should not be prohibited from pursuing them on the basis of mootness.

To be clear, I do not opine on whether Appellants have stated one or more valid claims upon which relief may be granted as we are not here addressing any of the merits of Appellants' claims. That issue is not before us. It was not raised here or decided below by the trial court. Therefore, I will assume for purposes of this dissent, as the Majority has, that Appellants' claims are otherwise viable.

The error by the Majority is glaring. Nowhere in the entirety of the complaint do Appellants request that the Election be overturned, or decertified. Appellants have neither requested decertification or invalidation of the Election. Rather, they seek relief in the nature of declaratory and injunctive relief, mandamus, and damages. In substance, the complaint avers that Defendants have neglected and willfully refused to perform the duties imposed upon them by law and would continue to do so. Thus, I cannot agree with the application of the doctrine of mootness in this instance, and I would reach the merits which I believe raise very serious constitutional questions and Election Code issues regarding whether Defendants committed unconstitutional, unlawful, intentional, reckless, and grossly negligent acts in violation of state and federal laws and in dereliction of their duties.

Further, because the action is not moot, it is unnecessary to consider the exceptions to the mootness doctrine. Nevertheless, for the reasons stated below, the Majority has not only misapplied those exceptions, but it has also failed to engage in any meaningful analysis of them in the context of the circumstances presented in this case. Finally, for the reasons set forth below, I believe the Majority has erred in its conclusion regarding Appellants' failure to exhaust their administrative remedies.

### The Complaint Alleges Election Fraud/Misrepresentation and Post-Election Fraud But Does Not Seek to Overturn or Invalidate the Election

As averred by Appellants, they filed a complaint with 98 exhibits, originally on October 18, 2021, which was not docketed until January 1, 2022, with testimony, documents, video, and audio evidence of thousands of grievous election law violations, criminal acts, massive election fraud, spoilation of election materials required to be maintained by both state and federal statutes, and fraudulent certification of the votes in Delaware County.[6]  (Hoopes/Stenstrom Br. ¶ 3, page 9.)  The complaint consists of five counts alleging: Common Law Fraud (Count I); Fraudulent Misrepresentation (Count II); Negligent Misrepresentation (Count III); Common Law Quo Warranto (Count IV); and Mandamus and Equitable Relief (Count V).  **Appellants' legal claims are based upon documents and evidence received in response to a RTKL request on May 21, 2021**, pursuant to which they received video and audio evidence of election law violations, testimony, documents, and other evidence which they allege show **patterns or practices of behaviors in violation of the Election Code and state and federal statutes** and include, among other things, that

- the County certified the election with data from over half the precincts missing,
- Return Sheets could not be reconciled because election data was missing,
- Return Sheets and election tapes were hidden in the basement of the Voting Machine Warehouse,
- new Return Sheets were created after the election,
- Delaware County employees were observed destroying election data,
- ballots were delivered to the precinct by a sheriff,
- election data was destroyed to hide election law violations and fraud,
- thousands of ballots were processed unobserved,
- 300 ballots were taken out of one individual's car at the drop off location,

_____

[6] I note that the action was timely filed within six months of Defendants' alleged activity; however, it was three years, spanning another election cycle, before it was decided by the Majority that the claims were now moot.

- missing V-Drivers were found in an empty van with Biden stickers,
- some election data and materials were thrown in the trash,
- machines/proof tapes were destroyed and thrown in the trash,
- information responsive to the RTKL requests was excluded, altered, and destroyed,
- information responsive to the RTKL request was intentionally mixed up to make it time consuming for anyone reviewing the response to be able to organize the data and read it,
- new election results were created with "Clean V Drives" so the data would be consistent with the November 3, 2020 data,
- there were missing tally tapes, poll tapes, ballot count tapes, write-in report tapes, open poll tapes, zero report tapes,
- the Blue Crest Sorter was erased of all November 3, 2020 election data, and
- there was absolute chaos on the day of the election and afterward.

(Complaint ¶¶ 204, 205, 207, 209, 212, 219, 221, 222, 225, 227, 228, 229, 237, 239, 249, 251, 256, 262, 268, 344.)  Appellants aver, *inter alia*, that

> [the] failure on the part of Defendants to ensure the transmission of accurate information and data reflecting the proper tally of legal votes cast at an election by Delaware County's legally registered citizen voters; to properly certify the aforementioned citizens' votes; to ensure elections in Delaware County are conducted legally and that all facets of an election, including the processing, tallying, return, and certification of the votes, complies with the federal and state constitutions, and all applicable federal and state laws and regulations; to guard and preserve all evidence in relation to a federal election as required by federal law; to refrain from destroying or altering any such evidence; and to respond to and produce complete, truthful, and accurate information, materials, and data as requested in response to a lawful request for said information by a member of the public; and to preserve

all documents and information demonstrating that this was done, **constitutes a violation of state and federal law and entitles [Appellants] to the relief sought herein**.

(Complaint, ¶ 150) (emphasis added).

**The allegations span a period of time before, during, and after the Election through the present**. For example, Appellants allege that after the election and in response to RTKL requests, Defendants destroyed, deleted, secreted, altered, hid, and obscured election data, materials, and equipment in violation of common law and statutory law in order to prevent the discovery of the alleged fraud. (Complaint, ¶ 184.) Appellants also aver that Defendants' committed fraud in their responses to RTKL requests in order to conceal the irregularities and violations of the Election Code. (Complaint, ¶ 202.) Those allegations do not relate to and do not support any claim to overturn the Election. Rather, they relate to the claim there was some inappropriate action on the part of Defendants **in responding forthrightly to RTKL requests**. The certification of the Election did not "resolve" or "moot out" any of these contentions because they relate to something more than just the outcome of the Election. Yet, the Majority states these claims "look largely frivolous" without any examination of them whatsoever.[7]

The case alleges fraud and willful misconduct[8] against Defendants in their official capacities, with a factual issue outstanding as to whether the conduct alleged

---

[7] *See Hoopes v. Boockvar* (Pa. Cmwlth., Nos. 876 and 877 C.D. 2022, filed February 24, 2025), slip op. at 3 ("Appellants have persisted in this appeal through yet another General Election, in a case that is obviously moot, having obviously ignored or avoided the lawful statutory remedy, **on claims that look largely frivolous**.").

[8] The term "willful misconduct" is construed to mean willful misconduct aforethought and is synonymous with an intentional tort. Specifically, it occurs when the actor desired to bring about the result that followed or was aware that it was substantially certain to ensue. *Orange Stones Co. v. City of Reading*, 87 A.3d 1014 (Pa. Cmwlth. 2014) (governmental immunity does not bar claims against an employee if their actions constituted willful misconduct); *Holt v. Northwest Pennsylvania Training Partnership Consortium, Inc.*, 694 A.2d 1134 (Pa. Cmwlth. 1997) (local agency employees can be held liable if they have engaged in crime, actual fraud, actual malice, or willful misconduct).

occurred.[9]  Merely because the Election was certified before the fraud was detected does not mean that there is no other relief available to Appellants.  The Majority seems to believe that since the Election was certified, there is no point to resolving whether the alleged fraud or willful misconduct occurred.  *See Hoopes v. Boockvar* (Pa. Cmwlth., Nos. 876 and 877 C.D. 2022, filed February 24, 2025), slip op. at 3 (affirming trial court's dismissal of preliminary objections on the basis that "the 2020 General Election is long over and settled").  I vehemently disagree with that sentiment as it is diametrically opposite of what the complaint avers.  The prayer for relief states:

> [Appellants] seek mandamus relief to the extent that there is a want of any other adequate, appropriate and specific remedy available; there is a clear legal right to which they are entitled; and there exists a corresponding duty on the part of the Defendants.
>
> Nunc pro tunc relief is also appropriate where a breakdown in the administrative operations of the Election Board occurs. *Appeal of Orsatti*, . . . 598 A.2d 1341 ([Pa. Cmwlth.]), *appeal denied*, . . . 600 A.2d 956 ([Pa.] 1991).
>
> [Appellants] also seek injunctive relief from the Court as follows:
>
>> A. [Appellants] request the Court to issue a protective order to enjoin Defendants, and anyone acting on their behalf, from destroying, secreting, or otherwise altering any and all voting machines, servers, computers, computer codes, hard drives, software, programs, internet records, mobile phone records, ballot images, photocopies, or

---

[9] In Pennsylvania, a cause of action for fraud and willful misconduct in an official capacity can be pursued under certain conditions.  According to 42 Pa.C.S. § 8550, in any action against a local agency or its employee for damages due to an injury caused by the employee's act, if it is judicially determined that the act constituted a crime, actual fraud, actual malice, or willful misconduct, the provisions of Sections 8545 (official liability generally), 8546 (defense of official immunity), 8548 (indemnity), and 8549 (limitation on damages) do not apply.  *See also Edmondson v. Zetusky*, 674 A.2d 760 (Pa. Cmwlth. 1996), 42 Pa.C.S. § 8550.

scanned images of ballots, return tapes, and/or tally sheets, paper ballots, return tapes, and/or tally sheets used in and/or related to the November 3, 2020, [E]lection;

B. Order Defendants to produce any and all voting machines, servers, computers, computer codes, hard drives, software, and programs, internet records, mobile phone records, ballot images, photocopies, or scanned images of ballots, return tapes, and/or tally sheets, paper ballots, return tapes, and/or tally sheets used in and/or related to the November 3, 2020, [E]lection;

C. Allow [Appellants] access to any and all voting machines, servers, computers, computer codes, hard drives, software, and programs, internet records, mobile phone records, ballot images, photocopies, or scanned images of ballots, return tapes, and/or tally sheets, paper ballots, return tapes, and/or tally sheets used in and/or related to the November 3, 2020, [E]lection;

D. Allow [Appellants] to conduct an independent and non-partisan forensic examination of any and all voting machines, servers, computers, computer codes, hard drives, software, and programs, internet records, mobile phone records, ballot images, photocopies or scanned images of ballots, return tapes, and/or tally sheets, paper ballots, return tapes, and/or tally sheets used in and/or related to the November 3, 2020, [E]lection;

[Appellants] also request the Court to:

Determine that, by their conduct as alleged herein, Defendants violated the Pennsylvania Right to Know Law [RTKL], in that they did destroy, secrete, alter, or otherwise adulterate information, documents, and materials responsive to Plaintiffs' requests for information, consistent with the allegations in this Complaint.

Determine that, by their conduct as alleged herein, Defendants committed fraud, consistent with allegations in the Complaint.

Determine that, by their conduct as alleged herein, Defendants committed intentional and negligent misrepresentation, consistent with the allegations in the First Amended Complaint. Determine that, by their conduct as alleged herein, Defendants engaged in a conspiracy to violate the law and commit fraud consistent with allegations in this Complaint.

Grant such other and further relief as is equitable and just and grant him costs, expenses and attorney fees incurred in having to bring this action and damages [Appellants] are entitled to pursuant to law.

(Complaint at 99-103.)

As is evident, the relief Appellants seek includes a jury trial and, *inter alia*, mandamus (**require Defendants to properly and lawfully administer fair and true elections**), and equitable injunctive and declaratory relief by way of a judgment finding that fraud had indeed occurred during and also **after the Election** in an effort to conceal it **and to stop [D]efendants from doing the things they are shown to be doing in future elections**. *See, e.g.*, Paragraph 353 of [c]omplaint pointing out defendant John Savage's intention to **continue in his role** as Chief Custodian and Voting Machine Warehouse Supervisor (quoting Facebook post that he intends to "**re-enter the ring**" in mid-December). *See also* Paragraph 255 of the complaint stating, "This pattern of conduct further corroborates the system of fraud in continuing to have more ballots, continuous practices of the Delaware County fraud that took place in the November 3, 2020, election **and continues to this day**." *See also* Paragraphs 24, 27, 30, 32, 37, 39, 41, 43, 45, 47, 49, 51, 53, 55, 57, 59, 61, 63, 65, 67, 69, 71, 73, 75, 77, 80, 82, 87, 89, 91, 93, 95, 97, 98, 100, and 104 of the complaint, identifying those Defendants who **currently remain** employed by Delaware County, the Delaware County Board of Elections, the Delaware County Bureau of Elections, Delaware County Council, and the Delaware County Return

Board.[10]  On page 9 of her Brief, Moton states that "[i]t is [her] contention that such behavior and practices **cannot be tolerated or allowed to continue in Delaware County's elections.**"

Appellants also seek a judgment for damages for violations of their civil rights stemming from the use of uncertified voting systems, for allowing, or facilitating vote flipping, additions, falsification, and/or deletions to the vote returns and vote tally counts, and for allowing or facilitating party preference tracking and/or ballot identification. (Complaint, ¶ 384.)  The allegations of Defendants' election law violations and fraud are also not isolated to the immediate timeframe surrounding the Election.  In fact, Appellants attached evidence to the complaint to support their claims that the planning, execution, and coverup took place over the course of 18 months starting in November of 2020.

Thus, contrary to the Majority's conclusion, the relief Appellants seek does not exclusively include a review of the Election.  *See Hoopes v. Boockvar* (Pa. Cmwlth., Nos. 876 and 877 C.D. 2022, filed February 24, 2025), slip op. at 13 (suggesting that because the Election was completed and certified, and its officeholders inaugurated the Court is prevented from affording any meaningful relief).  It also includes a request that Defendants **be held accountable** under Pennsylvania law for Appellants' common law, legal, constitutional, and equitable claims based on a myriad of transgressions designed to cover up disparities in the election results and the manner in which election materials were handled.  These are legitimate legal theories pleaded and causes of action raised that have nothing to do with decertifying or overturning the Election.  These claims were not even addressed by the Majority, let alone in the context of mootness.  They are not moot because they do not rely on, nor ask for, transformation of prior events.  **Each claim and request for relief should have been addressed separately and independently**.  *Vega*,

---

[10] There is nothing in the record which suggests that these Defendants will not remain in their respective roles in the upcoming elections.

960 F.3d at 673. Had the Majority undertaken the required analysis, it would have properly concluded that Appellants were not, in fact, seeking to overturn or decertify the Election. As Appellants assert repeatedly in their briefs, **"[t]he case is not about the results of the [Election] and does not seek to overturn that [E]lection**." (Moton's Br. at 9) (emphasis added). According to Moton,

> [Appellants] **did seek** and continued to seek justice by holding the named and unnamed Defendants responsible for hiding the truth from the American people concerning the [E]lection.

(Moton's Br. 29) (emphasis added). *See also* Moton's Brief at 10 (explaining that the complaint was "**to stop Defendants from doing the things they are shown to be doing in future elections**"); Hoopes/Stenstrom Brief at 20 ("**Nowhere in the entire complaint**/petition did [] **Appellants** (then Plaintiffs) **request that the November 2020 election be overturned**, or even decertified, or present any controversy that could be considered 'moot.'"); Hoopes/Stenstrom Brief at 21 ("Appellants specifically requested no less than [] 10 rulings and remedies to the election law violations, spoliation, and blatant fraud — **none of which included overturning the November 2020 election**").

The entirety of the Majority's conclusion on mootness is based on its inaccurate and perplexing finding that Appellants' sole demand was to overturn the Election results. The Majority's conclusion that Appellants are seeking to have the election decertified or overturned as the basis for mootness can only be viewed at best as an oversight of the plain language of the pleadings. Appellants never requested decertification of the Election as a specific form of relief in their complaint. They also did not challenge the State of Pennsylvania's certification of said Election. Yet, this is the primary basis for the Majority's finding of mootness. *See Hoopes v. Boockvar* (Pa. Cmwlth., Nos. 876 and 877 C.D. 2022, filed February 24, 2025), slip op. at 13.

### Mootness Doctrine

PAM - 12

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396 (1980). In general, courts will not decide moot questions. *See Sierra Club v. Pennsylvania Public Utility Commission*, 702 A.2d 1131 (Pa. Cmwlth. 1996), *aff'd*, *Sierra Club v. Pennsylvania Public Utility Commission*, 731 A.2d 133 (Pa. 1999) (holding that courts will dismiss an appeal as moot unless an actual case or controversy exists at all stages of the judicial or administrative process). In this regard, our Supreme Court has stated that:

> This Court generally will not decide moot questions. . . . [W]e [have] summarized the mootness doctrine as follows: The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way— changes in the facts or in the law—**which allegedly deprive the litigant of the necessary stake in the outcome**. The mootness doctrine requires that an actual case or controversy must be extant at all stages of review, not merely at the time the complaint is filed.

*Pap's A.M. v. City of Erie*, 812 A.2d 591, 599-600 (Pa. 2002) (citations omitted) (emphasis added). A claim is moot if no order of the court can affect the rights of the parties with regard to the requested relief. *See DeFunis v. Odegaard*, 416 U.S. 312, 316, (1974) (noting that the "starting point" for an analysis of mootness is the "familiar proposition that [] courts are without power to decide questions that cannot affect the rights of litigants in the case before them") (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

Applying this general rule to the case at hand, the Majority has in effect concluded that Appellants have lost their stake in the matter because the Election has already been certified. Without addressing the specific claims for relief or the alleged Election Code and constitutional violations to determine if any of these are "live"

controversies, the Majority relies on *Ioannidis v. Wolf* (Pa. Cmwlth., No. 635 M.D. 2020, filed July 8, 2021), as footing for its holding of mootness.  Specifically, the Majority reasons:

> Here, the claims for relief in the Complaint are strikingly similar to those requested of this Court in *Ioannidis [v. Wolf* (Pa. Cmwlth., No. 635 M.D. 2020, filed July 8, 2021)]. We **determined those claims were moot, in part because the election was completed and certified**, and its officeholders inaugurated, preventing the Court from being able to afford meaningful relief. Appellants make the same argument: that they seek information and investigation, rather than to disturb the results of the election. We rejected that argument in Ioannidis, and **similarly here we conclude that this matter is technically moot.**

*Hoopes v. Boockvar* (Pa. Cmwlth., No. 876 and 877 C.D. 2022, filed February 24, 2025), slip op. at 13 (emphasis added).  But *Ioannidis* **is readily distinguishable,** as in that case, the **party did seek to overturn an election.**  Specifically, the petitioner in *Ioannidis* sought declaratory and injunctive relief to direct the governor to withdraw the certification of the 2020 Election.  Even though the petitioner in *Ioannidis* argued that he was not seeking to overturn or contest the outcome of the election, as the Court properly found, he was doing just that based on the claims.  Here, Appellants have clearly alleged fraud, misrepresentation, and violations of the Election Code, constitutions, and the RTKL, which were concealed and could be repeated in future elections.  Their request for declaratory and injunctive relief is obviously premised on exposing past fraudulent practices and preventing any such violations in future elections to ensure the people of this Commonwealth free and fair elections.[11]  Thus, contrary to the Majority's view, I cannot agree that the claims for relief in the instant complaint are "strikingly similar" to

---

[11] In the three years these parties have had to wait to have their case argued before this Court, another national election occurred. The subsequent 2024 General Election as such could not and is not part of this case and no presumptions one way or the other can be made regarding it.

those in *Ioannidis*. *Hoopes v. Boockvar* (Pa. Cmwlth., Nos. 876 and 877 C.D. 2022, filed February 24, 2025), slip op. at 13.

Deciding this case on the merits is not a pointless gesture. Many of the allegations are brought against individuals who **remain** in their respective positions or involve alleged practices of Delaware County and, as averred, if unchecked, there is a sufficient likelihood that they would again engage in the alleged conduct. Nowhere in the complaint, pleadings, or briefs do Appellants ask that the Election be decertified or invalidated.

### Exceptions to the Mootness Doctrine

Assuming *arguendo* the case is moot, which it is not, the Majority has misapplied the exceptions to mootness. Pennsylvania courts have repeatedly recognized two exceptions to the mootness doctrine: (1) for matters of great public importance, and (2) for matters capable of repetition, which are apt or likely to elude review. *See Rendell v. Pennsylvania State Ethics Commission*, 983 A.2d 708, 719 (Pa. 2009).

#### *Capable of Repetition*

A case is "capable of repetition, yet evading review" when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). Even assuming *arguendo* the 2020 Election makes the case moot, the challenged action (to the extent it occurred **before** the Election) in its duration was too short to be fully litigated prior to the Election. Furthermore, "[e]lection cases often fall within this exception, because the inherently brief duration of an election is almost invariably too short to enable full litigation on the merits." *Porter v. Jones*, 319 F.3d 483, 490 (9th Cir. 2003).

Appellants' concern over the recurrent nature of the questions involved is clear. If the same parties remain in the same positions they were in during the Election,

or if the alleged practices are perpetuated, then there is a strong likelihood of future recurrence of the same or similar problem.  This is certainly a real danger.  In *Werner v. King*, 164 A. 918 (Pa. 1933), the Supreme Court decided to review a moot question that concerned duties that public officials had to perform every year.  There, the Supreme Court refused to dismiss as moot the plaintiff's complaint concerning the Department of Revenue's yearly advertisement of a mercantile appraisers' list because the question was one that can be "raised any year hereafter, when the lists are about to be advertised, unless it is settled by us."  *Id.* at 919.

In *Bradway v. Cohen*, 642 A.2d 615 (Pa. Cmwlth. 1994), Eric Bradway, the Democratic candidate for state representative sought to enjoin Lita Cohen, the Republican candidate's alleged violations of the Election Code.  Bradway had alleged that Cohen displayed campaign posters in the district that lacked the requisite authorization and financial information in violation of the Election Code.  Meanwhile, the election was held, and Bradway was defeated.  The common pleas court sustained Cohen's preliminary objections and dismissed Bradway's motion for injunctive relief.  On appeal, Cohen argued that the matter was rendered moot since Bradway was defeated in the election and any detriment he may have suffered had also ended.  *Id.* at 252.  She also argued that the issue of the alleged violation of the Election Code was not a matter of great public importance.  We disagreed that the matter was moot, explaining

> Election cases in particular raise the question of mootness when the election at issue has passed before the appeal can be heard. In *In re General Election, November 8, 1988*, . . . 560 A.2d 260 ([Pa. Cmwlth.] 1989), this Court considered the appeal by the Republican State Committee and Republican Executive Committee of Allegheny County because the issue of whether the trial court could grant blanket authorization to the county's election officials to register untimely registration applications of over 4[,]700 voters was deemed one of **wide public importance** which was **recurring** in nature but **evaded review due to the timing aspects of the election.** Similarly, because

the instant appeal presents a question of public importance which is capable of repetition yet evading review, we decline to dismiss the appeal as moot and will address the merits of the appeal.

*Id.* at 253 (emphasis added).

Recently, in *In re General Election, 2024*, 328 A.3d 606 (Pa. Cmwlth. 2024), we held that a campaign's request to prohibit certain badges worn by a political party's poll watchers that had the words "PA DEMS VOTER PROTECTION" was violative of the Election Code. The trial court denied the request. By the time the case got to this Court, the election was over. We noted that, technically, the campaign's appeal was moot because Election Day was over, and we could no longer enter an order permitting or prohibiting the poll watcher badges while they were still in use. Nonetheless, we held that the dispute was capable of repetition and that it was reasonable to expect that a political party will provide poll watchers with the same or similar badges in future elections. We also noted that any challenge to the badges is likely to evade judicial review because Election Day will always have ended by the time it reaches an appellate court.

Here, as in *Werner*, *Bradway*, and *In re General Election, 2024*, the issues pertaining to the manner in which Defendants conducted the certification of the Election and responded to requests for information relating thereto are capable of repetition and may evade review unless they are decided now. As Hoopes/Stenstrom argue:

> The Court did not address a single allegation brought against the 48 [D]efendants. **And leaves [D]efendants (all government officials) capable of continuing to evade review,** and permits their grievous and in criminal behavior to be repeated for every election since the [E]lection**, without accountability, repercussions or remedy by the citizenry**.

(Hoopes/Stenstrom Br. at 13-14) (emphasis added). They further argue on pages 15 and 16 of their Brief:

> 17. The Court's avoidance of review of allegations, and avoidance of evidentiary hearing and discovery, would clearly

**enable** the unrepentant [D]efendants **to continue** with their unlawful conduct, **without Civil remedy by the citizenry, candidates, and intervenors** (certified poll watchers), either before an election (for not being "ripe"), or after an election (for being moot), with no remaining litigative surface area or vector for remedy under Pennsylvania Civil Law that governs conduct of election officials that stands apart from the standing and laches requirements of "election law," leaving a [c]onstitutional "no man's land" in which public corruption may thrive.

(Hoopes/Stenstrom Br. at 15-16) (emphasis added). On page 8 of her Brief, Moton explains that

[she] filed this action as a **last resort in an effort to have Defendants' bad practices and procedures exposed** and **corrected,** and to **ensure ongoing fair elections in Delaware County. If Defendants are not held accountable, which the District Attorney refuses to do, the behavior seen in the attachments will continue and election integrity is lost.**

(Moton's Br. at 8) (emphasis added).

Nonetheless, to compound the egregious error by the Majority in dismissing for mootness on the grounds that Appellants are supposedly only asking to "disturb the results of the [E]lection," which they are not, the Majority goes on to misapply the applicable legal standard to the exception. *Hoopes v. Boockvar* (Pa. Cmwlth., No. 876 and 877 C.D. 2022, filed February 24, 2025), slip op. at 13. Specifically, the Majority states that "there is **not a reasonable expectation** that Appellees **will engage in the same exact action** *as alleged in the complaint*." *Id.* However, contrary to the Majority's pronouncement, under this exception to mootness, in order for a question to be capable of repetition, it is not necessary to predict that history will repeat itself at a very high level of specificity. *See Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 463 (2007).

Moreover, there has been no trial or discovery in this case because it has been peremptorily precluded by the trial court's finding of mootness. The Majority

provides absolutely no discussion or justification for its conclusion that "there is not a reasonable expectation that [Defendants] would engage" in the same conduct alleged in the complaint. *Hoopes v. Boockvar* (Pa. Cmwlth., Nos. 876 and 877 C.D. 2022, filed February 24, 2025), slip op. at 13. In fact, the exact opposite has been claimed – that there is a reasonable expectation that the misconduct will again occur unless certain safeguards are put in place to ameliorate the potential of that happening another time. In reviewing an order sustaining preliminary objections, we must accept as true all well-pleaded factual allegations and any inferences that reasonably may be drawn from them. *Wurth v. City of Philadelphia*, 584 A.2d 403 (Pa. Cmwlth. 1990). The Majority here failed to adhere to that standard by ignoring the averments of the complaint. Because the complaint alleges that most, if not all, Defendants remain in their positions, and there has been an ongoing practice of Election Code violations, there is a demonstrated probability that they will again engage in the same conduct if the situation were to present itself again. The Majority's declaration to the contrary is wholly conclusory, and therefore I decline to join it.

### *Great Public Importance*

I also believe the great public importance exception applies. As argued by Appellants, identifying voter fraud and eliminating violations of the Election Code and the constitution before they occur again protects the rights of the people to free and fair elections. With virtually no discussion, explanation, or justification, the Majority once again in summary fashion simply concludes that "the exception does not apply here." *Hoopes v. Boockvar* (Pa. Cmwlth., No. 876 and 877 C.D. 2022, filed February 24, 2025), slip op. at 14.

The question of election fraud is undoubtedly a public one of great future importance to voters and election officials alike. *Pardee v. Schuylkill County*, 120 A. 139, 140 (Pa. 1923) ("[s]ince the question thus raised is a public one, of great future importance, alike to the various counties and the taxpayers therein, we shall proceed to

decide it, although it might be considered moot"). To the extent it could be decided that the practices and procedures undertaken by Defendants **after** the Election to, in hindsight, create documentation in an attempt to reconcile the election data with the election results, a final decision on the matter would provide guidance to the public officials whose offices and authority it affects. The public would also greatly benefit from a decision in this matter, directly and through the clarity it would give local election officials regarding what they may and may not do during the election certification process and after an election. As it stands now, Defendants remain vindicated which sends a clear message that the alleged conduct set forth in the complaint cannot be challenged and thus will be tolerated.

### Exhaustion of Administrative Remedies

Finally, I must also disagree with the Majority's conclusion that Appellants failed to exhaust their administrative remedies. As aptly argued by Appellants, it would have been impossible to engage in the administrative process in a 20-day window, as the alleged **unlawful conduct was not discovered until** after the 20-day window for challenging an election had closed. Appellants have made clear the specific alleged violations did not come to their attention until they received documents and videos in **response to a 2021 RTKL request**. The Majority's conclusion effectively precludes any lawsuit where the alleged violations of the Code or constitution are concealed, or illegal conduct is discovered beyond the 20-day window. This is contrary to our precedent. *See In re Koch Election Contest Case*, 41 A.2d 657, 660 (Pa. 1945); *In re General Election for District Justice*, 670 A.2d 629, 635 (Pa. 1996).

### Conclusion

As noted, we here address only the trial court's dismissal for mootness. The Majority's opinion is moreover based on its own factual and speculative conclusion, that the Appellants are seeking, without basis, to "delegitimize this Commonwealth's elections." *Hoopes v. Boockvar* (Pa. Cmwlth., Nos. 876 and 877 C.D. 2022, filed

PAM - 20

February 24, 2025), slip op. at 4. The Majority dismisses the allegations in the complaint as "ill-conceived." *Id.* This is tantamount to deciding as a matter of fact that the allegations are without merit. That is not for our Court to do. These are issues of credibility for the factfinder who, in this case, is the common pleas court.

The public has a right to know and to be assured that our government takes such allegations of infringement of its citizens' right to a free and fair election very seriously and, if necessary, will undertake measures intended to prevent it. There is a "longstanding constitutional mandate that every citizen of this Commonwealth is entitled to no less than a fair and free election." *Kelly v. Commonwealth* (Pa. Cmwlth., No. 620 M.D. 2020, filed November 27, 2020) (single-judge opinion).[12] Such willingness to acknowledge the possibility that these violations occurred goes to the heart of public confidence in election results. The same is true if the allegations turn out to be incorrect. The public has a right to know either way. This can only occur by a trial where the allegations laid out in the complaint are tested. "Wrong decisions issued at the wrong time are doubly threatening to the integrity of Pennsylvania's elections and the public's confidence in them." *Baxter v. Philadelphia Board of Elections* (Pa. Cmwlth., Nos. 1305 and 1309 C.D. 2024, filed October 30, 2024) (McCullough, J., dissenting), *petitions for allowance of appeal granted, in part*, (Pa., Nos. 395-96 EAL 2024, January 17, 2025).

For the reasons aforesaid, we should vacate the trial court's order dismissing for mootness and remand the case to the trial court for further proceedings to determine whether violations of our common law, the Election Code, RTKL, or constitution have indeed occurred, and are likely to re-occur. We must be ever mindful of the "right of the

---

[12] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, unreported opinions of this Court issued after January 15, 2008, may be cited for their persuasive value. 210 Pa. Code § 69.414(a).

people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I.

If we deem this case moot and affirm its dismissal on that basis, we would, in effect, be declaring that there is no legal redress when election fraud is discovered after an election is certified. This will have a deleterious effect on the election process, inviting election officials to act with abandon, possibly disposing of potentially implicating evidence until the election is certified, to ensure they will not be held accountable. I cannot be party to that outcome. For all of the above, I must emphatically dissent.[13]

_____
PATRICIA A. McCULLOUGH, Judge

---

[13] In response to footnote 13 of the Majority Opinion, we have included citations to the Majority Opinion for ease of reference.